UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YOLANDA JOEFIELD,

                Petitioner,

– against –

UNITED STATES OF AMERICA

**MEMORANDUM, ORDER AND JUDGMENT DENYING PETITION FOR EXPUNGEMENT**

13-MC-367

**JACK B. WEINSTEIN, Senior United States District Judge:**

### Table of Contents

I. Introduction ................................................................................................................... 1
II. Facts ............................................................................................................................. 1
III. Procedural History ...................................................................................................... 3
IV. Law .............................................................................................................................. 3
   A.    Authority to Expunge Criminal Records ........................................................ 3
   B.    Standard for Expungement .............................................................................. 5
V. Application of Law to Facts ......................................................................................... 9
VI. Conclusion ................................................................................................................. 10

### I. Introduction

Petitioner moves for expungement or sealing of her criminal record. She pled guilty on February 18, 2002 to the felony of misusing a social security number. *See* 42 U.S.C § §408(a)(7)(B); Judgment of Conviction, *United States v. Joefield*, No. 02-CR-1437 (E.D.N.Y. May 9, 2003), ECF No. 19 ("J. of Conviction"). She was sentenced to three years of probation, 250 hours of community service, and a $100.00 special assessment. *See* J. of Conviction. Her petition is denied.

### II. Facts

Petitioner immigrated to the United States from Trinidad and Tobago in 1993. Pet'r's Aff., July 18, 2013, ECF No. 10-1, at ¶ 12. She struggled to find employment and a place to live and, for a period of time, slept on the train. *Id.* at ¶ 17. Eventually she found a position as a home health aide for the elderly and graduated from the Allen School of Health as a certified nursing assistant. *Id.* at ¶¶ 18-20.

She could not find better paid employment because she lacked a social security number. *Id.* at ¶ 21. An acquaintance gave her one, which she used to obtain a position as a security officer at Terminal 4 of John F. Kennedy Airport. *Id.* at ¶¶ 22-23. She was charged with misuse of that social security number. *Id.* at ¶ 25.

After successfully completing her sentence, she was employed by a family as an aide to an elderly man at Shore View Nursing Home. *Id.* at ¶¶ 26-27. After the man's death, Joefield began the certification process to become a Licensed Practical Nurse. *Id.* at ¶ 29. She did not complete the degree for fear that her conviction would prevent her from finding employment.

Petitioner's two daughters are United States citizens, both of whom are pursing Master's degrees. *Id.* at ¶¶ 37-38. She is helping to raise her three grandchildren. *Id.* at ¶ 39. She is an active member of her church. *Id.* at ¶ 40.

She has never been rejected from a job to which she applied due to her conviction; nor has she never been fired from a job due to her conviction. *See generally* Tr. of Hr'g on Pet. to Expunge, August 1, 2013 ("Aug. 1 Tr."). Petitioner has never been denied any licensure due to her conviction. *Id.*

Petitioner's current source of income is a catering business operated out of her home. Pet'r's Aff. at ¶ 30. No potential clients have refused to use petitioner's catering business due to her conviction. *See* Aug. 1 Tr.

Petitioner now expresses a desire to apply for a job as a corrections officer. Pet'r's Aff. at ¶ 31. She has not done so out of fear that she will be denied employment on account of her felony conviction. *Id.* at ¶ 33; *see also* Aug. 1 Tr. Claimed by petitioner is a "strong deference and passion for law enforcement"; she pleads that she is "reputable, productive, and moral." *Id.* at ¶¶ 34-35.

## III. Procedural History

More than a decade after her conviction, on May 2, 2013, petitioner filed a *pro se* petition requesting the expungement or sealing of records relating to her felony conviction. *See* Mot. to Expunge, May 2, 201, ECF No. 1. An initial hearing on the petition was held on June 13, 2013. *See* Min. Entry, June 13, 2013, ECF No. 5. At the hearing, petitioner was granted an adjournment to obtain counsel. *See* Tr. of Hr'g on Pet. to Expunge, June 13, 2013, ECF No. 5 ("June 13 Tr."). Subsequently retained counsel filed a brief on July 19, 2013. *See* Mem. of Law in Support of Pet. to Expunge Her Criminal Record, July 19, 2013, ECF No. 10. A hearing on the petition, with counsel present, was held on August 1, 2013. *See* Aug. 1 Tr.

## IV. Law

### A. Authority to Expunge Criminal Records

The Attorney General is authorized to "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records." 28 U.S.C. § 534(a)(1). The Department of Justice is authorized to disseminate criminal history information to: screen applicants for employment by criminal justice agencies; assist in licensing and employment proceedings; publicize information about wanted persons suspected of serious offense; conduct background checks using the National Instant Criminal Background Check System; it may aid

noncriminal justice agencies in conducting criminal justice functions; and supply information to private contractors administering criminal justice. 28 C.F.R. § 20.33.

No express statutory authority grants federal courts the power to expunge criminal records. *See, e.g.*, Fruqan Mouzon, *Forgive Us Our Trespasses: The Need for Federal Expungement Legislation*, 39 U. Mem. L. Rev. 1 (2008) (advocating for federal expungement legislation to increase the possibility for ex-offenders to contribute positively to society). A near-even circuit split exists among Courts of Appeal on the issue of whether federal courts have the inherent authority to expunge criminal records. *Compare United States v. Coloian*, 480 F.3d 47, 51 (1st Cir. 2007) (finding no jurisdiction to expunge criminal records); *United States v. Rowlands*, 451 F.3d 173, 179 (3d Cir. 2006) (same); *United States v. Meyer*, 439 F.3d 855, 862 (8th Cir. 2006) (same); *United States v. Sumner*, 226 F.3d 1005 (9th Cir. 2000), *with United States v. Flowers*, 389 F.3d 737, 739-40 (7th Cir. 2004) (granting federal courts the authority to expunge criminal records); *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993) (same); *Livingston v. U.S. Dep't. of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985) (same); *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) (same). *See also* Wright and Miller, 13 Fed. Prac. & Proc. § 3523.2 ("[C]ourts disagree . . . on whether there is ancillary jurisdiction to entertain a proceeding to expunge based solely upon equitable considerations."). Ex-offenders facing extraordinary circumstances warranting expungement may be denied relief because of their residence in a circuit that does not allow federal courts to expunge. *See* Mouzon, *supra*, at 29.

The Supreme Court has declined to clarify whether authority to expunge exists and, if it does, the standard for expungement. *See Coloian v. United States*, 552 U.S. 948 (2007); *Rowlands v. United States*, 549 U.S. 1032 (2006); *Brennan v. Hobson*, 470 U.S. 1084 (1985); *Schnitzer v. United States*, 435 U.S. 907 (1978).

The Court of Appeals for the Second Circuit has recognized that district courts may use their inherent equitable powers to order expungement of conviction or arrest records. *Schnitzer*, 567 F.2d at 539 (citing *United States v. Rosen*, 343 F. Supp. 804, 807 (S.D.N.Y.1972)).

Several district courts within the Second Circuit have exercised the power. *See, e.g.*, *United States v. Sahadeo*, No. 94-CR-3 (TPG), 2011 WL 5828339, at *1 (S.D.N.Y. Nov. 17, 2011); *Doe v. Immigration and Customs Enforcement*, No. M-54 (HB), 2004 WL 1469464, at *1 (S.D.N.Y. June 29, 2004); *United States v. Doe*, No. 71-CR-892 (CBM), 2004 WL 1124687, at *1 (S.D.N.Y. May 20, 2004); *United States v. Doe*, 935 F. Supp. 478, 480 (S.D.N.Y. 1996).

### B. Standard for Expungement

The decision to expunge criminal records requires a balancing of "[t]he government's need to maintain arrest records . . . against the harm that the maintenance of arrest records can cause citizens." *Schnitzer*, 567 F.2d at 539.

The standard in the Second Circuit under which courts may expunge criminal records is stringent; the power may only be used in "extreme circumstances." *Doe*, 935 F. Supp. at 480; *Schnitzer*, 567 F.2d at 539 ("[T]he power to expunge 'is a narrow one, and . . . should be reserved for the unusual or extreme case.'" (quoting *United States v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975)); *United States v. McFadzean*, No. 93-CV-25 (CSH), 1999 WL 993641, at *3 (S.D.N.Y. Nov. 2, 2009) ("[E]xpungement is an extreme, and rare, remedy . . .").

Expungement has been deemed appropriate 1) when courts determine that a petitioner's constitutional right has been violated by an arrest or a conviction, *Schnitzer*, 567 F.2d at 539; 2) when mass arrests rendered it impossible to prove probable cause, *id.*; 3) when the purpose of arrests was solely to harass workers, *id.* (citing *Sullivan v. Murphy*, 478 F.2d 938 (D.C. Cir. 1973) (granting motions to expunge records of those arrested during a protest over American

5

military involvement in Southeast Asia); *United States v. McLeod*, 385 F.2d 734, 750 (5th Cir. 1967) (granting motions to expunge records of arrests and prosecutions undertaken to intimidate election workers and discourage African Americans voters)); 4) when the police misused criminal records to a defendant's detriment, *id.*, and 5) when an arrest was proper but based on a statute later declared unconstitutional, *id.* (citing *Wheeler v. Goodman*, 306 F. Supp. 58, 66 (W.D.N.C.1969) (expunging the records of those arrested under an unconstitutional vagrancy statute)).

Expungement is routinely denied when no constitutional violation has been demonstrated. *See, e.g.*, *Thompson*, 2010 WL 3614921, at *1; *Fernandez v. United States*, Nos. 09-MC-326 (CPS), 98-CR-902, 2009 WL 2227140, at *2 (E.D.N.Y. July 24, 2009); *Holmes v. United States*, No. 1999-MC-0106 (MDG), 2005 WL 1320149, at *4 (E.D.N.Y. June 2, 2005); *United States v. James*, No. 97-CR-715 (ILG), 2003 WL 21056989, at *1 (E.D.N.Y. Feb. 13, 2003); *United States v. Aigle*, 199 F. Supp. 2d 5, 7 (E.D.N.Y. 2002); *United States v. Hasan*, No. 98-CR-786 (ILG), 2002 WL 31946712, at *1 (E.D.N.Y. Dec. 4, 2002); *In re Farkas*, 783 F.Supp. 102, 103 (E.D.N.Y. 1992).

Difficulty in obtaining or maintaining employment because of a criminal record has been held insufficient to warrant expungement. *See, e.g.*, *United States v. Ravitsky*, No. 2002-CR-1268 (MDG), 2006 WL 1455467, at *3 (E.D.N.Y. May 23, 2006) ("[T]he generalized fear of a potential adverse effect on future employment is an insufficient justification for sealing."); *Moss v. United States*, No. 09-MC-495 (JFB), 2011 WL 1706548, at *3 (E.D.N.Y. May 4, 2011) (denying motion to expunge by petitioner who was disqualified from service as a substitute teacher and tutor due to her conviction), *Thompson*, 2010 WL 3614921, at *1 (citing *Schnitzer*, 567 F.2d at 540) (denying motion for expungement by petitioner who "encountered obstacles" to

employment due to her criminal record); *Gardner v. United States*, No. 10-MC-0159 (KAM) (JO), 2010 WL 2292222, at *1 (E.D.N.Y. Apr. 23, 2010) (denying motion to expunge by petitioner who claimed his conviction "prejudice[d] his employment prospects"); *Fernandez*, 2009 WL 2227140, at *2 (denying motion to expunge by an unemployed petitioner who was having trouble obtaining employment); *United States v. Grant*, No. CR-94-0018 (CPS), 2008 WL 2039309, at *2 (E.D.N.Y. May 9, 2008) (denying motion for expungement because petitioner failed to show "that an accurate record, reflecting her acquittal, precluded her from employment"); *United States v. Feret*, No. 05-MJ-00075 (KAM), 2007 WL 2262867, at *2 (E.D.N.Y. Aug. 3, 2007) (denying motion to expunge by petitioner who feared having to explain a dismissed complaint to potential employers); *Slansky v. White*, No. 96-CV-2338 (JFK), 1996 WL 312401, at *2 (E.D.N.Y. June 10, 1996) (denying motion to expunge by petitioner who was fired from a job when a background check revealed his conviction); *Farkas*, 783 F. Supp. at 104 (quoting *Schnitzer*, 567 F.2d at 540) (denying motion to expunge by petitioner who feared the effect of his arrest record on his position as vice president of a prestigious securities firm).

Routinely denied are petitions for expungement of arrest records, as opposed to conviction records, even if an underlying arrest did not lead to a conviction. *See, e.g.*, *Sandy v. United States*, No. 08-MC-306 (RML), 2008 WL 4865993, at *1 (E.D.N.Y. Nov. 7, 2008) (denying petitioner's motion for expungement of an arrest record even though the criminal complaint against petitioner was summarily dismissed). *But cf. Sahadeo*, 2011 WL 5828339, at *1 (granting motion to expunge by petitioner who, as a child, was named in a complaint, for filing false immigration documents, that was terminated in a *nolle prosequi*) *and Doe*, 2004 WL 1469464, at *5-6 (expunging petitioner's criminal record which indicated that petitioner had

7

been arrested and subject to immigration proceedings, when in fact he had never been arrested, detained, or charged with any crime).

In the absence of a constitutional violation, courts sometimes, but not often, grant motions for expungement when a petitioner can make a clear showing of actual—not merely speculative, anticipated or feared—serious economic harm. *Compare Doe*, 935 F. Supp. at 480 (granting motion for expungement to petitioner who was fired from his job due to youthful conviction vacated under the now-repealed Federal Youth Corrections Act (FYCA)), *and Doe*, 964 F. Supp. at 1429 (same), *with Akwurah v. United States*, No. 99-MC-045 (ILG), 1999 WL 390832, at *1 (E.D.N.Y. Mar. 31, 1999) (holding that petitioner's fear of economic harm to his family, if he was deported due to his criminal conviction, was insufficient to warrant expungement). *See also Doe*, 2004 WL 1124687, at *1 (granting motion to expunge, unopposed by the government, by petitioner whose conviction was vacated under the FYCA, and who demonstrated financial loss, social and professional stigma, and embarrassment due to his criminal record).

While lamenting this strict standard for expungement, most courts nonetheless deny expungement requests. Acknowledged is the critical role that employers must play in order to ameliorate the collateral consequences suffered by convicted felons.

As one judge of this court has observed:

> Unfortunately . . . if there is some force that will permit [petitioner] to move on and put the lingering effects of his misdemeanor conviction behind him, it is not the law or the courts, but rather the willingness of an employer to display enough understanding and wisdom to recognize that movant has not only paid his debt to society but has excelled in the more challenging task of overcoming the past. While the law does not go so far as to erase the records of a lapse in judgment, neither does it envision that he will be forever branded as a pariah and forbidden from fully contributing to the fabric of society.

*Hasan*, 2002 WL 31946712, at *2; *see also United States v. Robinson*, No. 04-CR-0580 (VVP), 2007 WL 2077732, at *3 (E.D.N.Y. July 18, 2007) (acknowledging the harshness of a New Jersey statute that permanently disqualifies anyone with a criminal conviction from becoming certified as a teacher).

Before the American Law Institute are proposed new methods for relieving offenders from the collateral sanctions of criminal convictions, all of which are worth exploring further. *See, e.g.*, Model Penal Code: Sentencing, Proposed § 6x.04 (Am. Law Inst., Discussion Draft No. 5 2013) (proposing that sentencing courts be able to grant orders of relief from collateral sanctions, unless the sanction bears a logical connection to the risks of future criminal conduct or the sanction's benefits outweigh the burdens it places on the offender's ability to re-enter law-abiding society); Model Penal Code: Sentencing, Proposed § 6x.09 (Am. Law Inst., Discussion Draft No. 5 2013) (proposing that sentencing courts be able to issue certificates of good conduct to ex-offenders who have established their rehabilitation by a preponderance of the evidence, in order to remove collateral sanctions that they face while seeking benefits or opportunities); Model Penal Code: Sexual Assault and Related Offenses, Proposed § 213.7 cmt. at 61-78 (Am. Law Inst., Discussion Draft 2013) (exploring the historical development of laws imposing collateral consequences on convicted sex offenders, the justification for the sanctions, the intended effects of the sanctions, and the actual, significant relationship between collateral sanctions and high rates of recidivism among convicted sex offenders).

V.  **Application of Law to Facts**

Petitioner's case, while compelling, does not fit within the narrow confines of the present expungement standard. Petitioner's work ethic and desire to lead a productive life are commendable, but the powers of the court are limited. She has not demonstrated the

extraordinary circumstances necessary to warrant the extraordinary remedy of expungement or sealing. Her conviction for a serious felony of dishonesty was valid, and she has not challenged the constitutionality of the conviction, her arrest, or the law she violated.

She was convicted as an adult, ten years ago, and, significantly, her conviction has not been vacated or set aside. She was not arrested in a mass setting without probable cause; she was not arrested for purposes of harassment; neither law enforcement nor private persons have misused her criminal record to her detriment; her arrest was not based on an invalidated statute. *Cf. Schnitzer*, 567 F.2d at 540 (citing *Sullivan*, 478 F.2d at 973; *Kowall*, 53 F.R.D. at 216; *Wheeler*, 306 F. Supp. at 66; *McLeod*, 385 F.2d at 750).

Petitioner has never been rejected from a job in law enforcement. *See* Aug. 1 Tr. She has not applied for one because of the existence of her criminal record. *Id.* But a generalized fear of adverse employment consequences is insufficient to warrant expungement. *See* Part IV.B, *supra*. Future potential employers, under present law, have a right to know of this serious defect and to weigh it against petitioner's admirable work record.

Although petitioner has "paid" her debt to society and appears to be fully rehabilitated, "expungement is an extreme, and rare, remedy . . ." for which she is, unfortunately, not a candidate. *McFadzean*, 1999 WL 993641, at *3.

## VI. Conclusion

The petition is denied. No costs or disbursements are ordered.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: August 5, 2013
Brooklyn, New York

10